Filed 4/16/15  P. v. Garcia CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MARLON IVAN CHAVEZ GARCIA,<br><br>    Defendant and Appellant. | H040077<br>(Santa Clara County<br>Super. Ct. No. C1242134)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The above captioned opinion, filed on March 26, 2015, is hereby modified as follows:  On page 16 of the opinion, at the end of Section II.A.4., insert the following paragraph:

> Defendant further argues that the waiver required by section 1203.067(b)(4) infringes upon his statutory psychotherapist-patient privilege under Evidence Code section 1014.  To the extent the statutes conflict, it is the later, more specific statute that controls.  (*Nguyen v. Western Digital Corp.* (2014) 229 Cal.App.4th 1522, 1550, quoting *Young v. Haines* (1986) 41 Cal.3d 883, 894; *Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 757.)  Because the Legislature enacted section 1203.067(b)(4) after it enacted Evidence Code section 1014, and because the former is more specific than the latter, we conclude the waiver requirement supersedes the evidentiary privilege.  (Stats. 2010, ch. 219, § 17; Stats. 1994, ch. 1010, § 106.)

There is no change in the judgment.

The petition for rehearing is denied.

_____
MÁRQUEZ, J.


_____
GROVER, J.


Bamattre-Manoukian, Acting P.J., would grant the petition for rehearing.


_____
Bamattre-Manoukian, Acting P.J.

2

Filed 3/26/15 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040077 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1242134) |
| v. | |
| MARLON IVAN CHAVEZ GARCIA, | |
| Defendant and Appellant. | |

Defendant Marlon Ivan Chavez Garcia pleaded no contest to one count of possession of child pornography.  (Pen. Code, § 311.11, subd. (a).)[1]  The trial court granted a three-year term of probation that included six months of electronic monitoring as a condition of probation.  The court then ordered, among other conditions of probation, that defendant complete a sex offender management program as mandated by Penal Code section 1203.067 (section 1203.067).  The court also imposed seven probation conditions requiring defendant:  (1) to waive any privilege against self-incrimination and participate in polygraph examinations as part of the sex offender management program under section 1203.067(b)(3); (2) to waive any psychotherapist/patient privilege to enable communication between the sex offender management professional and the probation officer under section 1203.067(b)(4); (3) not to access the internet without prior approval

_____

[1] Subsequent undesignated statutory references are to the Penal Code.

of the probation officer; (4) not to purchase or possess any pornographic or sexually explicit material as defined by the probation officer; (5) not to date, socialize with, or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer; (6) not to possess or use any data encryption technique program; and (7) not to frequent, be employed by, or engage in any business where pornographic materials are openly exhibited.

On appeal, defendant challenges these probation conditions variously as unconstitutional, overbroad, and lacking in scienter requirements. First, we hold that the condition requiring a waiver of the privilege against self-incrimination is prohibited by the Fifth Amendment under *Minnesota v. Murphy* (1984) 465 U.S. 420 (*Murphy*) and must be stricken. Second, we construe the waiver of the psychotherapist-patient privilege as requiring waiver only insofar as necessary to enable communication between the probation officer and the psychotherapist. We hold that the waiver as construed in this fashion is not overbroad in violation of defendant's constitutional right to privacy. Third, we hold the condition ordering defendant not to date, socialize or form any romantic relationship with any person who has physical custody of a minor is unconstitutionally vague and overbroad. We will remand to the trial court to consider whether to impose an alternative condition consistent with our reasoning below. Finally, we will order the trial court to insert scienter requirements into the remaining conditions.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On July 19, 2012, San José police executed a search warrant at defendant's home. Police found child pornography downloaded onto computers and hard drives taken from defendant's bedroom. There was no evidence defendant was involved in the production

---

[2] Our statement of the facts of the offense is based on defendant's motion to reduce a felony to a misdemeanor, filed in the trial court. The record contains no other statement of the facts.

or distribution of child pornography, and no file-sharing software was found on defendant's computers.

The prosecution charged defendant by complaint with a single count of possessing matter depicting a person under 18 engaging in or simulating sexual conduct. (§ 311.11, subd. (a).) Defendant pleaded no contest. At sentencing on July 31, 2013, the trial court granted a three-year term of probation that included six months of electronic monitoring as a condition of probation.

The trial court then imposed the probation conditions at issue here, as follows: "You shall waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the program pursuant to 1203.067(b)(3) of the Penal Code. The Court wants to make sure that its intention is known, and that is that this waiver is limited to facilitate the successful completion of the program. This also applies to the next condition. [¶] You shall waive any psychotherapist/patient privilege to enable communication between the sex offender management professional and probation officer pursuant to Section 1203.067(b) (4) and Section 290.09 of the Penal Code." The court then ordered: "You may not date, socialize with, or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer. [¶] You shall not purchase or possess any pornographic or sexually explicit material as defined by the probation officer. You shall not frequent, be employed by, or engage in any business where pornographic materials are openly exhibited. You shall not access the internet or any other online service, through the use of a computer or other electronic device, including a phone, at any location, including place of employment, without prior approval of the probation officer. [¶] You shall not possess or use any data encryption technique program." Defendant objected to all these conditions, among others, but the trial court implicitly overruled defendant's objections by imposing the conditions.

3

## II. DISCUSSION

A. *Section 1203.067 Waivers*

Defendant challenges the constitutionality of two waivers required under section 1203.067. He contends the condition requiring waiver of any privilege against self-incrimination under section 1203.067(b)(3) violates the Fifth Amendment and is overbroad. Second, he contends the condition requiring waiver of any psychotherapist-patient privilege under section 1203.067(b)(4) violates his constitutional right to privacy. The Attorney General argues that both waiver conditions are constitutional as worded.

1. *Statutory Scheme*

Under section 1203.067(b)(2), any person placed on formal probation on or after July 1, 2012, for any offense requiring registration under Penal Code sections 290 through 290.023, "shall successfully complete a sex offender management program, following the standards developed pursuant to Penal Code section 9003, as a condition of release from probation." Section 1203.067(b)(3) requires "[w]aiver of any privilege against self-incrimination and participation in polygraph examinations, which shall be part of the sex offender management program." Section 1203.067 (b)(4) requires "[w]aiver of any psychotherapist-patient privilege to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09."[3]

The Legislature enacted these provisions in 2010 to amend the Sex Offender Punishment, Control, and Containment Act of 2006 (hereafter, the "Containment Act"). (Stats. 2010, ch. 219, § 17.) The Containment Act created "a standardized, statewide system to identify, assess, monitor and contain known sex offenders for the purpose of reducing the risk of recidivism posed by these offenders, thereby protecting victims and

---

[3] The same two waiver conditions apply to parolees. (Pen. Code, § 3008, subds. (d)(3) & (d)(4).)

potential victims from future harm." (Pen. Code, § 290.03, subd. (b), Stats. 2006, ch. 337, § 12.) The Containment Act now requires participation in an "approved sex offender management program" certified by the California Sex Offender Management Board (CASOMB). (Pen. Code, § 9003.)

Under Penal Code section 9003, CASOMB promulgates standards for certification of sex offender management programs and "sex offender management professionals." (Pen. Code, § 9003, subds. (a) & (b).) Such programs "shall include treatment, as specified, and dynamic and future violence risk assessments pursuant to Section 290.09." (Pen. Code, § 9003, subd. (b).) Furthermore, sex offender management programs "shall include polygraph examinations by a certified polygraph examiner, which shall be conducted as needed during the period that the offender is in the sex offender management program." (*Ibid*.)

Penal Code section 290.09 specifies that "[t]he certified sex offender management professional shall communicate with the offender's probation officer or parole agent on a regular basis, but at least once a month, about the offender's progress in the program and dynamic risk assessment issues, and shall share pertinent information with the certified polygraph examiner as required." (Pen. Code, § 290.09, subd. (c).) Penal Code section 290.09 further requires the sex offender management professional to administer a State-Authorized Risk Assessment Tool for Sex Offenders (SARATSO) in two forms—the "SARATSO dynamic tool" and the "SARATSO future violence tool"—and to send the person's scores on these tests to the probation officer. (Pen. Code, § 290.09, subd. (b)(2).) The probation officer must then transmit the scores to the Department of Justice, which makes the scores accessible to law enforcement officials through the Department's website. (*Ibid.*)

2. *Waiver of Any Privilege Against Self-Incrimination*

By requiring the waiver of "any privilege against self-incrimination," the plain language of section 1203.067(b)(3) squarely implicates defendant's rights under the Self-

Incrimination Clause of the Fifth Amendment.  Furthermore, the "core" right of the Self-Incrimination Clause protects against the use of compelled statements "*in a criminal proceeding* against the person who gave them."  (*Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1128 (*Maldonado*) [citing *Chavez v. Martinez* (2003) 538 U.S. 760, 766-773 (plur. opn. of Thomas, J.) (*Chavez*)], original italics.)  Because the statute requires waiver of *any* privilege against self-incrimination, the probation condition necessarily includes a waiver of the "core" right under the Self-Incrimination Clause.  The plain language of the waiver, if left intact, would therefore allow the state to use defendant's compelled statements against him in a separate criminal proceeding.  The United States Supreme Court, however, has held that the Fifth Amendment prohibits the state from using a probationer's compelled statements against the probationer in a separate criminal proceeding.[4]  (*Murphy*, *supra*, 465 U.S. 420; accord *United States v. Saechao* (9th Cir. 2005) 418 F.3d 1073; *United States v. Antelope* (9th Cir. 2005) 395 F.3d 1128.)

Furthermore, the United States Supreme Court has held that a state may not compel a probationer to waive the right to invoke the Fifth Amendment or otherwise punish a probationer for invoking its protections:  "Our decisions have made clear that the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege."  (*Murphy*, *supra*, 465 U.S. at p. 438.)  This holding was based on the United States Supreme Court's longstanding "penalty cases" jurisprudence, under which the Fifth Amendment prohibits a compelled, prospective waiver of the Fifth Amendment, even prior to and apart from any criminal

---

[4] *Murphy* referred to "compelled" statements as those compelled over a valid claim of the Fifth Amendment.  (*Murphy*, *supra*, 465 U.S. at p. 427.)  However, the Fifth Amendment is not "self-executing."  (*Id.* at p. 425.)  If a probationer does not explicitly invoke the Fifth Amendment, he or she voluntarily waives the privilege against self-incrimination and the statements are not "compelled" within the meaning of the Fifth Amendment.  Under these circumstances, the probationer's statements may be used in a criminal prosecution, just as Murphy's statements were used against him.

6

proceeding.  (*Lefkowitz v. Cunningham* (1977) 431 U.S. 801; *Lefkowitz v. Turley* (1973) 414 U.S. 70; *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation* (1968) 392 U.S. 280, 283; *Gardner v. Broderick* (1968) 392 U.S. 273, 276.)  More recently, the Supreme Court reaffirmed these principles, and a plurality of the court observed that "[o]nce an immunity waiver is signed, the signatory is unable to assert a Fifth Amendment objection to the subsequent use of his statements in a criminal case, even if his statements were in fact compelled.  A waiver of immunity is therefore a prospective waiver of the core self-incrimination right in any subsequent criminal proceeding . . . ."  (*Chavez*, *supra*, 538 U.S. at p. 768, fn. 2 (plur. opn. of Thomas, J.).)  These cases make clear that the probation condition here, by requiring defendant to waive any privilege against self-incrimination, is prohibited under the Fifth Amendment.

Even without the waiver, the state may still compel defendant to participate in treatment—even if doing so requires him to make incriminating statements—provided he retains immunity from the use of compelled statements in separate criminal proceedings.  As the court in *Murphy* observed, "a state may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination.  Under such circumstances, a probationer's 'right to immunity as a result of his compelled testimony would not be at stake,' . . . ."  (*Murphy*, *supra*, 465 U.S. at p. 435, fn. 7.)

The California Supreme Court recently reaffirmed this principle as applied to public employees in *Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704 (public defender could be compelled under threat of discharge to answer questions over his claim of the privilege provided he retained immunity from prosecution).  Our high court held: "In many instances, of course, it is necessary or highly desirable to procure citizens' answers to official questions, including their formal testimony under oath.  In such circumstances, an individual's invocation of the privilege against self-incrimination

would frustrate legitimate governmental objectives.  In light of the competing interests, it is well established that incriminating answers may be officially compelled, without violating the privilege, when the person to be examined receives immunity 'coextensive with the scope of the privilege'—i.e., immunity against both direct and 'derivative' criminal use of the statements.  [Citations.]  In such cases, *refusals to answer are unjustified*, 'for the grant of immunity has removed the dangers against which the privilege protects.  [Citation.]' " (*Id.* at pp. 714-715.)  (Italics added.)  Furthermore, where the state's competing interests require it, the state need not issue a formal prospective grant of immunity.  (*Id.* at p. 725.)

The state's interest here is at least as great as those in *Spielbauer*.  This is particularly so when that interest is balanced against the rights of a probationer, who generally enjoys less constitutional protection than a public employee who is not convicted of any crime.  (See *United States v. Knights* (2001) 534 U.S. 112, 119 ["Inherent in the very nature of probation is that probationers 'do not enjoy "the absolute liberty to which every citizen is entitled." ' "].)  Accordingly, no *formal* grant of immunity is required for the state to pursue incriminating questions.

Under these principles, no waiver of the privilege against self-incrimination is necessary for participation in the sex offender management program.  The state may still compel defendant to participate in the program and in polygraph examinations as part of the program, even if doing so requires him to make incriminating statements.  (*Murphy*, *supra*, 465 U.S. at p. 435, fn. 7.)  However, if defendant claims the privilege against self-incrimination, and if the state compels incriminating statements from him under threat of penalty, then he retains immunity from the use and derivative use of his statements in any separate criminal proceeding against him.

3.  *The Dissent's Interpretation of the Penalty Exception*

In *Murphy*, the court held that "if the state, either expressly or by implication, asserts that invocation of the privilege would lead to revocation of probation, it would

8

have created the classic penalty situation, *the failure to assert the privilege would be excused*, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." (*Murphy*, *supra*, 465 U.S. at p. 435, italics added.) The dissent and the Attorney General contend this so-called "penalty exception" means the waiver here is constitutional because the probationer's statements could not be used against him in a criminal proceeding. We respectfully disagree.

First, the dissent ignores the plain language of the waiver under section 1203.067(b)(3). If the waiver is valid, as the dissent asserts, then defendant has waived his ability to assert the Fifth Amendment in a subsequent criminal proceeding, and his statements would be admissible against him.

Second, the dissent's argument misconstrues *Murphy*. The Supreme Court held that, under the penalty exception, "the failure to assert the privilege would be excused." (*Murphy*, *supra*, 465 U.S. at p. 435.) This is simply an exception to the general rule that the Fifth Amendment must be affirmatively invoked; it does not render a compelled waiver constitutional. Under the penalty exception, Murphy's statements would have been inadmissible precisely because a threat to revoke his probation for asserting the privilege against self-incrimination *would have violated the Fifth Amendment*. The court in *Murphy* stated this explicitly in holding that "the State could not constitutionally carry out a threat to revoke probation for the legitimate exercise of the Fifth Amendment privilege." (*Id.* at p. 438.) The holding that statements made under the penalty exception are inadmissible is simply an application of the exclusionary rule as required by the Fifth Amendment violation. As pointed out above, the Supreme Court in *Murphy* based this holding on its "penalty cases" jurisprudence. (*Lefkowitz v. Cunningham*, *supra*, 431 U.S. 801; *Lefkowitz v. Turley*, *supra*, 414 U.S. 70; *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation*, *supra*, 392 U.S. 280, 283; *Gardner v. Broderick*, *supra*, 392 U.S. 273, 276.) The dissent does not address any of these earlier cases prohibiting compelled waivers.

The dissent's position would also introduce a serious practical difficulty. If the waiver were left intact, then a probationer's incriminating statements would automatically be immunized under the penalty exception, even if the probationer never invoked the Fifth Amendment. This automatic grant of immunity could complicate future prosecutions, since the prosecution would bear "the heavy burden of proving that all of the evidence it proposes to use was derived from legitimate independent sources." (*Kastigar v. United States* (1972) 406 U.S. 441, 461-462.) By contrast, with the waiver condition stricken, a probationer must affirmatively invoke the Fifth Amendment to enjoy its protections. If defendant makes incriminating statements after failing to invoke the privilege, his statements could be used against him in a criminal prosecution without violating the Fifth Amendment. (*Murphy*, *supra*, 465 U.S. at p. 440.) If, on the other hand, defendant invokes the Fifth Amendment in response to questioning, the questioner or the probation officer would have the opportunity to consult with the district attorney on the wisdom of compelling further statements and thereby conferring immunity.

The dissent and the Attorney General adopt the position that the Fifth Amendment does not prohibit the state from requiring the probationer to answer questions as part of the treatment program, provided his answers are not used against him in a criminal prosecution. We agree with this conclusion. As we point out above, the Supreme Court has long made clear that requiring the probationer to answer questions—even if doing so is incriminating—does not violate the Fifth Amendment, as long as the probationer retains immunity. (*Murphy*, *supra*, 465 U.S. at p. 435, fn. 7.) Furthermore, if defendant refuses to answer questions posed to him as part of the treatment program, the state can use his silence as " 'one of a number of factors to be considered by a finder of fact' in deciding whether other conditions of probation have been violated." (*Ibid*.) Thus, in our view, the waiver is not only unconstitutional but unnecessary as well.

10

4. *Waiver of the Psychotherapist-Patient Privilege*

The California Supreme Court has recognized that communications between a patient and psychotherapist are protected by a psychotherapist-patient privilege based on the federal constitutional right to privacy. "The psychotherapist-patient privilege has been recognized as an aspect of the patient's constitutional right to privacy." (*People v. Stritzinger* (1983) 34 Cal.3d 505, 511 (*Stritzinger*).) "We believe that a patient's interest in keeping such confidential revelations from public purview, in retaining this substantial privacy, has deeper roots than the California statute and draws sustenance from our constitutional heritage. In *Griswold v. Connecticut* [(1965)] 381 U.S. 479, 484, the United States Supreme Court declared that 'Various guarantees [of the Bill of Rights] create zones of privacy,' and we believe that the confidentiality of the psychotherapeutic session falls within one such zone." (*In re Lifschutz* (1970) 2 Cal.3d 415, 431-432 (*Lifschutz*).)

More recently, the California Supreme Court has questioned the continuing vitality of the constitutional bases for the psychotherapist-patient privilege. "Although over 40 years have elapsed since our decision in *Lifschutz*, the United States Supreme Court itself has not yet definitively determined whether the federal Constitution embodies even a *general* right of informational privacy." (*People v. Gonzales* (2013) 56 Cal.4th 353, 384 (*Gonzales*).) Following the lead of the United States Supreme Court in *Whalen v. Roe* (1977) 429 U.S. 589 and *NASA v. Nelson* (2011) 562 U.S. 134, our high court in *Gonzales* merely assumed, without deciding, that such a right exists. (*Gonzales*, *supra*, 56 Cal.4th at p. 385.) Regardless of the analytic approach taken by these courts, no court has yet overruled the holdings of *Lifschutz* and *Stritzinger*. We remain bound by them. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455.) Accordingly, we will proceed under the assumption that defendant enjoys the right to a psychotherapist-patient privilege based on his federal constitutional privacy rights.

11

"It is also well established, however, that the right to privacy is not absolute, but may yield in the furtherance of compelling state interests." (*Stritzinger*, *supra*, 34 Cal.3d at p. 511.) In *Stritzinger*, the court began by considering the state's "competing interest" in creating an exception to the privilege. (*Ibid.*) The court reaffirmed the holding of *Lifschutz* that any such exception must be narrowly construed, *ibid.*, "concomitant with the purposes of the exception." (*Lifschutz*, *supra*, 2 Cal.3d at p. 435.) These principles resemble the tailoring analysis in which a court considers whether a probation condition imposing limitations on a person's constitutional rights is closely tailored to the purpose of the condition. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)

In *Gonzales*, *supra*, 56 Cal.4th 353, the California Supreme Court recently considered the psychotherapist-patient privilege in the context of a proceeding under the Sexually Violent Predator Act (SVPA). The defendant, Ramiro Gonzales, had been convicted of multiple sex offenses over a 20-year period. (*Id.* at p. 358.) Gonzales was paroled in 2004 and he underwent psychological evaluation and treatment as a condition of parole. (*Id.* at p. 359.) After violating his parole conditions several times—including one incident in which he visited a children's playground—Gonzales was arrested and taken into custody. (*Id.* at pp. 359-360.) In 2006, the prosecution petitioned to commit Gonzales under the SVPA, and the matter was set for a jury trial.

Before trial, the prosecution sought to subpoena psychological records arising out of Gonzales' psychological treatment as a parolee. (*Gonzales*, *supra*, 56 Cal.4th at p. 361.) Gonzales moved to quash the subpoena on the basis the records were protected under the psychotherapist-patient privilege, partly relying on *Story v. Superior Court* (2003) 109 Cal.App.4th 1007 (*Story*) [psychotherapy records relating to therapy sessions engaged in as a condition of probation were protected by the statutory psychotherapist-patient privilege and could not be obtained by a prosecutor who sought the records for use in a subsequent murder prosecution].) The California Supreme Court distinguished between Gonzales' statutory claim under *Story* and his claim under the federal

12

constitutional right to privacy: "[W]e believe that in order to properly distinguish the federal constitutional issue from the state law issue, it is necessary, in determining whether the disclosure of defendant's therapy records and the admission of his therapist's testimony violated a federal constitutional right of privacy, to look to the specific nature and extent of the federal constitutional privacy interests that are actually implicated in this particular setting and to the permissible state law interests that would support the disclosure and admission of testimony in question in such a setting." (*Gonzales*, *supra*, 56 Cal.4th at p. 386.)

In its analysis, the court first noted that the constitutional privacy right invoked by Gonzales arose under the conditions of parole, and under the care of a psychotherapist funded by the state. (*Gonzales*, *supra*, 56 Cal.4th at p. 386.) The court then observed that "the federal Constitution grants states considerable leeway to impose very substantial limitations on the right of privacy retained by persons who are released on parole," citing *Samson v. California* (2006) 547 U.S. 843 (federal Constitution does not preclude a state from authorizing a search of a parolee at any time or place even in the absence of reasonable suspicion). Balanced against this "limited intrusion" of the privacy right at issue, the court held "the state has a particularly strong and legitimate interest in authorizing the disclosure and use of a parolee's prior statements that occur in parole-mandated therapy in a subsequent SVPA proceeding, especially when, as here, the parole-mandated therapy was occasioned by the parolee's prior conviction of a sex offense." (*Gonzales*, *supra*, 56 Cal.4th at pp. 387-388.) The court held disclosure was therefore supported by "a legitimate and substantial state interest," such that Gonzales' federal constitutional right to the psychotherapist-patient privilege was not violated by the release of his psychological records. (*Id.* at p. 388.)

Consistent with the above principles, we have considered the purpose of the waiver of the psychotherapist-patient privilege at issue here and the state's interest in compelling disclosure under it. Unlike the language of subdivision (b)(3), which

13

mandates waiver of any privilege against self-incrimination, the wording of subdivision (b)(4) explicitly sets forth the purposes of the waiver of the psychotherapist-patient privilege: "to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09." Section 290.09, in turn, requires communication between the sex offender management professional and the probation officer for two purposes. First, the sex offender management professional must provide the supervising probation officer with the probationer's scores on the SARATSO risk assessment tools. (Pen. Code, § 290.09, subd. (b)(2).) Second, the sex offender management professional must communicate with the probation officer about the probationer's "progress in the program and dynamic risk assessment issues." (Pen. Code, § 290.09, subd. (c).) By these provisions, the purposes of the psychotherapist-patient privilege waiver are expressly limited and comparatively well defined.

We find that the state's interest in furthering such communication is legitimate and substantial. The overriding goal of the Containment Model approach underlying the sex offender management program is public safety and the reduction of recidivism. The functioning of the model hinges in large part on open communication between the probation officer and the psychotherapist. (Cal. Sex Offender Management Bd., Sex Offender Treatment Program Certification Requirements, at pp. 6-8.)[5] Furthermore, probationers, like the parolee in *Gonzales*, are inherently subject to a greater degree of intrusion on their rights of privacy. (*United States v. Knights*, *supra*, 534 U.S. at p. 119.) Accordingly, we conclude the state has a sufficiently substantial interest in communication between these participants to justify disclosure here.

---

[5] This document is online at: <http://www.cce.csus.edu/portal/admin/handouts/CASOMB Program 10-29-13 complete.pdf> [Mar. 26, 2015]. We take judicial notice of these materials. (Evid. Code, §§ 452, 459.)

14

We next consider whether the scope of the waiver is properly tailored to this interest, or whether the waiver must be more narrowly construed concomitant with the purposes of the exception.  (*Stritzinger*, *supra*, 34 Cal.3d at p. 511; *Lifschutz*, *supra*, 2 Cal.3d at p. 435; *In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  Similar to the broad language used in the waiver of the privilege against self-incrimination, the language of the statute, read literally, requires the waiver of "*any* psychotherapist-patient privilege," regardless of the subject matter of the communication or the level of risk to public safety absent disclosure.  The waiver does not distinguish between comparatively more dangerous or less dangerous probationers.  But unlike the language of the waiver of the privilege against self-incrimination, this broad language is followed by the phrase: "to enable communication between the sex offender management professional and supervising probation officer, pursuant to Section 290.09."  This additional language limits what may be done with the probationer's communications once they are revealed.

We will therefore narrowly construe the statute as requiring a waiver of the psychotherapist-patient privilege only insofar as it is necessary "to enable communication between the sex offender management professional and supervising probation officer . . . ."  (Pen. Code, § 1203.067, subd. (b)(4).)  Specifically, we hold that defendant may constitutionally be required to waive the psychotherapist-patient privilege only to the extent necessary to allow the sex offender management professional to communicate with the supervising probation officer.  Furthermore, the supervising probation officer may communicate defendant's scores on the SARATSO risk assessment tools to the Department of Justice to be made accessible to law enforcement as required under section 290.09,  subdivision (b)(2).  This narrow interpretation of the statute allows the psychotherapist to communicate with the probation officer as necessary, furthering the purposes of the exception as set forth in the statute.  Apart from these exceptions, neither the psychotherapist nor the probation officer may relay protected communications to

some other third party under the waiver, and defendant's privacy rights based on the psychotherapist-patient privilege otherwise remain intact.

B. *Prohibition on Access to the Internet*

Defendant challenges the probation condition prohibiting him from "access[ing] the internet or any other online service, through the use of a computer or other electronic device, including a phone, at any location, including place of employment, without prior approval of the probation officer." The Attorney General contends the condition is valid so long as it includes an express scienter requirement, as held by a panel of this court in *People v. Pirali* (2013) 217 Cal.App.4th 1341,1351 (*Pirali*). Defendant acknowledges *Pirali* but asks us to reconsider. We decline defendant's request and conclude the probation condition is constitutional provided it includes a scienter requirement.

In *Pirali, supra,* 217 Cal.App.4th 1341, a different panel of this court considered a nearly identical probation condition requiring Pirali " 'not to have access to the Internet or any other on-line service through use of [his] computer or other electronic device at any location without prior approval of the probation officer.' " (*Id.* at p. 1344.) Pirali challenged the condition as vague and overbroad. The panel in *Pirali* rejected the overbreadth argument, noting that Pirali could still access the Internet by obtaining approval from his probation officer. (*Id.* at p. 1350.) Second, the panel acknowledged that the condition would be unconstitutionally vague in the absence of a scienter requirement, and the court modified the condition accordingly. (*Id.* at pp. 1350-1351.) The panel upheld the condition as modified.

The condition imposed on defendant here differs from the condition upheld in *Pirali* in only two respects. It explicitly restricts Internet access through the use of a phone, and it includes defendant's place of employment as a location from which access is forbidden. Defendant contends the restriction as to his place of employment must be stricken because his job requires him to access the Internet and the condition unnecessarily interferes with his ability to be employed. For this argument, he relies on

16

*United States v. Mark* (8th Cir. 2005) 425 F.3d 505 (remanding for examination of whether probation condition completely barring Internet access was least restrictive measure) and *United States v. Holm* (7th Cir. 2003) 326 F.3d 872 (invalidating total ban on Internet access). But neither case considered a probation condition allowing the defendant to access the Internet with the prior approval of a probation officer, as the condition here does. We think this allowance sufficiently alleviates the burden on defendant's ability to remain employed. As to the additional restriction on the use of a phone to access the Internet, we conclude the added language is immaterial. The language of the condition considered in *Pirali*—which prohibited access to the Internet through a "computer *or other electronic device*"—already prohibited the use of a phone to access the Internet. (*Pirali*, *supra*, 217 Cal.App.4th at p. 1344.) Based on the reasoning of *Pirali*, we conclude the probation condition at issue here is neither overbroad nor vague, provided it is modified to incorporate a knowledge requirement. We will order the trial court to modify the condition accordingly.

C. *Prohibition on Purchasing or Possessing Pornography*

Defendant contends the condition that he "shall not purchase or possess any pornographic or sexually explicit material as defined by the probation officer" is unconstitutionally vague, and must therefore be modified. The Attorney General concedes that the condition as written must be modified in accord with the holding of a panel of this court in *Pirali*, *supra*, 217 Cal.App.4th at page 1353. We accept the concession.

In *Pirali*, a panel of this court considered a probation condition ordering Pirali " 'not to purchase or possess any pornographic or sexually explicit material as defined by the probation officer.' " (*Pirali*, *supra*, 217 Cal.App.4th at p. 1344.) The court held: "Materials deemed explicit or pornographic, as defined by the probation officer, is an inherently subjective standard that would not provide defendant with sufficient notice of what items are prohibited." (*Id.* at p. 1353.) Accordingly, the court modified the

17

condition to order Pirali "not to purchase or possess any pornographic or sexually explicit material, having been informed by the probation officer that such items are pornographic or sexually explicit." (*Ibid.*)  We agree with the reasoning of *Pirali*, and we will order the trial court to modify the condition accordingly.

   D. *Prohibition on Dating, Socializing, or Forming a Romantic Relationship With Any Person Who Has Physical Custody of a Minor*

   Defendant challenges the condition requiring him not to "date, socialize with, or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer."  Defendant argues that this condition is unconstitutionally vague and overbroad in violation of his rights to freedom of association and privacy under the Fourteenth Amendment.  He also contends the requirement that he not "socialize" is unconstitutionally vague.  We agree that the requirement is both overbroad and vague, and we will order the trial court to strike the condition.

   "A probation condition that imposes limitations on a person's constitutional rights must closely tailor those limitations to the purpose of the condition to avoid being invalidated as unconstitutionally overbroad." (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  In other words, "[W]here an otherwise valid condition of probation impinges on constitutional rights, such conditions must be carefully tailored, ' "reasonably related to the compelling state interest in reformation and rehabilitation . . . ." ' " (*People v. Bauer* (1989) 211 Cal.App.3d 937, 942.)  All other probation conditions are reviewed for abuse of discretion.  "In granting probation, courts have broad discretion to impose conditions to foster rehabilitation and to protect public safety pursuant to Penal Code section 1203.1." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1120.)  No such abuse of discretion occurs unless the probation condition " ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal,

18

and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." [Citation.]' " (*People v. Olguin* (2008) 45 Cal.4th 375, 379.)

The United States Supreme Court has long recognized a constitutional right to freedom of association. (*Roberts v. United States Jaycees* (1984) 468 U.S. 609, 617.) Included in this right is the "freedom of intimate association," which is exemplified by those personal affiliations that "attend the creation and sustenance of a family—marriage [citation]; childbirth [citation]; the raising and education of children [citation]; and cohabitation with one's relatives [citation]." (*Id.* at p. 619; *Warfield v. Peninsula Golf & Country Club* (1995) 10 Cal.4th 594, 624.) By restricting defendant's freedom to date and form romantic relationships with other persons, the probation condition here implicates his freedom of intimate association. We must therefore consider whether the condition is "narrowly tailored" to the state's interest in reformation and rehabilitation. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

The Ninth Circuit Court of Appeals considered a similar probation condition in *United States v. Wolf Child* (9th Cir. 2012) 699 F.3d 1082 (*Wolf Child*). Wolf Child pleaded guilty to attempted sexual abuse after attempting to have sex with an intoxicated and unconscious 16-year-old girl. (*Id.* at p. 1088.) The sentencing court ordered Wolf Child not to " 'date or socialize with anybody who has children under the age of 18' " without prior approval from his probation officer. (*Id.* at p. 1089.) The court of appeals concluded that this condition was overbroad in violation of the defendant's right to freedom of association. (*Id.* at p. 1100.) In its reasoning, the court observed: "The category of people covered by this condition with whom [the defendant] is prohibited from establishing social relationships is enormous. Probably more than half the people in the United States would be on the 'do not associate' list." (*Id.* at pp. 1100-1101.) Off-limit persons included coworkers, bosses, family members, friends, spiritual leaders, and neighbors who have children. (*Id.* at p. 1101.) The court thereby found the scope of this prohibition to be too broad.

19

We find the court's reasoning in *Wolf Child* persuasive.  Like the probation condition in that case, the restriction here prohibits defendant from socializing with an extremely large category of persons unless he first obtains permission from his probation officer.  People who have custody of minors are ubiquitous, and would likely be present among defendant's coworkers, friends, family members, neighbors, and fellow church members.  And the condition prohibits defendant from socializing with them regardless of whether he has any contact with their children.  For example, defendant would be prohibited from socializing with coworkers—and possibly prevented from even holding a job—even though there may be little or no chance of meeting his coworkers' children.  Furthermore, such socialization among coworkers and others is likely to be so frequent that it would be impractical for defendant to obtain his probation officer's approval prior to every such incident.  The enormous scope of the condition thereby impinges on defendant's freedom far more broadly than necessary to serve the state's interests and the purposes of the condition.

We also agree that the term "socialize" is unconstitutionally vague in this context. "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)  "The vagueness doctrine ' "bars enforcement of 'a statute which either forbids or requires the doing of an act in terms so vague that men [or women] of common intelligence must necessarily guess at its meaning and differ as to its application.' " [Citations.]' " (*Ibid.*)  "A probation condition 'must be sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*)

We would agree that much incidental contact—such as waving or saying "hello" to a stranger—does not constitute socializing.  But that does not sufficiently clarify or narrow the scope of the condition.  As relevant here, the dictionary defines "socialize" as "enter into or maintain personal relationships with others." (Webster's 3d New Internat.

20

Dict. (1993) p. 2162.) Under this definition, a reasonable person cannot determine with sufficient precision what conduct constitutes "socializing," i.e., entrance into a personal relationship. If defendant briefly meets with a group of coworkers while working on a project at his job, is he "socializing" with them? What if he attends the meeting passively, without talking? Or if he talks, but only says a few words? Has he formed a personal relationship with any of his coworkers under these circumstances? The answers to these questions are insufficiently clear for the purposes of enforcing a probation condition. We conclude that the term "socialize" is too ambiguous for a reasonable probationer to know with sufficient precision what conduct is prohibited.

The same is true of the requirement that defendant not "date" or "form a romantic relationship" with persons having custody of a minor. It is unclear what conduct constitutes a "date." Furthermore, it is possible for a probationer to engage in these activities without coming into contact with the minors the condition seeks to protect. Thus, these conditions impinge directly on defendant's right of association, yet they only indirectly serve the stated interest. Much less restrictive and more narrowly targeted conditions are available for the same purposes, e.g., a requirement that defendant not be present in the same room with a minor absent adult supervision.

Because the condition is both overbroad and vague, we will reverse and remand to the trial court to consider imposing a probation condition that is more "sufficiently precise" and "closely tailor[ed]" to the purpose of protecting minors in defendant's presence. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890.)

E. *Prohibition on Possession or Use of Any Data Encryption Technique Program*

Defendant challenges the probation condition prohibiting him from "possess[ing] or [using] any data encryption technique program." He contends the condition is unconstitutionally vague in the absence of a scienter requirement. The Attorney General concedes that the condition must be modified to require that defendant "not *knowingly* possess or use any data encryption technique program."

21

We agree the condition is impermissibly vague in the absence of a scienter requirement. Accordingly, we will accept the Attorney General's concession and will order the trial court to modify the condition as the Attorney General proposes.

F. *Condition That Defendant Must Not "Frequent" Any Business Where Pornography Is Openly Exhibited*

Defendant challenges the condition requiring him not to "frequent, be employed by, or engage in any business where pornographic materials are openly exhibited." He contends the condition is vague in the absence of a scienter requirement, and that the term "frequent" must be modified to be "visit or remain." The Attorney General concedes this issue and proposes to modify the condition to state that defendant "shall not knowingly visit or remain in, be employed by, or engage in, any business where pornographic materials are openly exhibited." We accept the concession.

We agree that the term "frequent" is unconstitutionally vague, as a panel of this court has previously held. (*People v. Leon* (2010) 181 Cal.App.4th 943, 952 (*Leon*) [term "frequent" is unconstitutionally vague]; *In re H.C.* (2009) 175 Cal.App.4th 1067, 1072 [term "frequent" is obscure and susceptible to multiple meanings].) Consistent with this court's modification of the term in *Leon*, we substitute the phrase "visit or remain in" for the term "frequent." Furthermore, because defendant could visit a business without knowing that prohibited materials are openly exhibited, we will order the trial court to modify the condition to incorporate a scienter requirement.

## III. DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with the following instructions. First, in light of our holding that the waiver requirement in Penal Code section 1203.067, subdivision (b)(3) is unconstitutional, the trial court shall strike the language "waive any privilege against self-incrimination and" from the probation condition implementing that subdivision. Second, the trial court shall strike the probation condition ordering defendant "not to date, socialize or form any romantic relationship

22

with any person who has physical custody of a minor unless approved by the probation officer," and the court shall consider whether to impose a probation condition consistent with our reasoning above. Third, the trial court shall modify the following probation conditions: (1) the condition restricting Internet access shall be modified to state that defendant shall not knowingly access the Internet or any other online service, through the use of a computer or other electronic device, including a phone, at any location, including place of employment, without prior approval of the probation officer; (2) the condition prohibiting purchase or possession of pornographic or sexually explicit materials shall be modified to state that defendant shall not purchase or possess any pornographic or sexually explicit material, having been informed by the probation officer that such items are pornographic or sexually explicit; (3) the condition prohibiting possession or use of data encryption technique programs shall be modified to state that defendant shall not knowingly possess or use any data encryption technique program; and (4) the condition that defendant not frequent, be employed by, or engage in any business where pornographic materials are openly exhibited shall be modified to state that defendant shall not knowingly visit or remain in, be employed by, or engage in, any business where pornographic materials are openly exhibited.

_____
Márquez, J.

I CONCUR:

_____
Grover, J.

BAMATTRE-MANOUKIAN, Acting P.J., Concurring and Dissenting

## I. INTRODUCTION

Defendant Marlon Ivan Chavez Garcia pleaded no contest to possessing matter depicting a minor engaged in sexual conduct. (Pen. Code, § 311.11, subd. (a).)[1] At the sentencing hearing, defendant was placed on probation for three years, ordered to serve six months in jail or on the electronic monitoring program, and required to register as a sex offender. (See § 290, subd. (c).)

The trial court imposed a number of probation conditions as required by section 1203.067, subdivision (b). Defendant was ordered to "enter, participate in, and complete an approved sex offender management program." (See § 1203.067, subd. (b)(2).) Defendant was required to "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the [sex offender management] program." (See *id.*, subd. (b)(3).) Defendant was required to "waive any psychotherapist/patient privilege to enable communication between the sex offender management professional and probation officer." (See *id.*, subd. (b)(4).) As to the latter two probation conditions, the trial court stated "its intention" that the waivers are "limited to facilitate the successful completion of the [sex offender management] program."

Defendant's probation conditions also included orders that he "not date, socialize with, or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer" (condition No. 5); "not purchase or possess any pornographic or sexually explicit material as defined by the probation officer" (condition No. 15); "not frequent, be employed by, or engage in any business where pornographic materials are openly exhibited" (condition No. 16); "not access the [I]nternet or any other online service, through the use of a computer or other electronic device, including a phone, at any location, including place of employment, without prior

---

[1] Unspecified section references are to the Penal Code.

approval of the probation officer" and "not possess or use any data encryption technique program" (condition No. 17).

Defendant challenges the probation conditions imposed pursuant to section 1203.067, subdivisions (b)(3) and (b)(4).[2]  As explained herein, I respectfully disagree with the majority's conclusion that the language "waive any privilege against self-incrimination" must be stricken from the probation condition required by section 1203.067, subdivision (b)(3), because I believe that the probation condition does not violate the Fifth Amendment of the United States Constitution and is not overbroad. However, I agree with the majority that the probation condition imposed pursuant to section 1203.067, subdivision (b)(4), which requires a waiver of the psychotherapist/patient privilege, is not overbroad and does not require modification.

Defendant also challenges probation condition Nos. 5, 15, 16, and 17.  I respectfully disagree with the majority's decision to remand this case so the trial court can more narrowly tailor condition No. 5, which prohibits defendant from dating, socializing, or forming a romantic relationship with any person who has physical custody of a minor unless approved by his probation officer.  I would modify that condition to remove the term "socialize."  I do, however, agree with the majority that condition No. 15, which prohibits defendant from possessing pornographic or sexually explicit material, should be modified to replace the phrase "as defined by the probation officer." I also agree that condition No. 16, which prohibits defendant from frequenting, being employed by, or engaging in any business where pornographic materials are openly exhibited, should be modified to replace the word "frequent" with the phrase "visit or

---

[2] The Supreme Court is currently considering the constitutionality of the conditions of probation mandated by section 1203.067, subdivision (b), for persons convicted of specified felony sex offenses.  (See *People v. Klatt* (2014) 225 Cal.App.4th 906, review granted July 16, 2014, S218755; *People v. Friday* (2014) 225 Cal.App.4th 8, review granted July 16, 2014, S218288; *People v. Garcia* (2014) 224 Cal.App.4th 1283, review granted July 16, 2014, S218197.)

2

remain in" and to include a knowledge requirement. Finally, I agree that condition No. 17, which prohibits defendant from using the Internet without prior approval of the probation officer and from possessing or using any data encryption technique, should be modified to include knowledge requirements.

## II. DISCUSSION

### A. *Section 1203.067, Subdivision (b)(3) Probation Condition*

As a condition of probation, defendant was required to "waive any privilege against self-incrimination and participate in polygraph examinations, which shall be part of the [sex offender management] program, pursuant to [section] 1203.067[, subdivision] (b)(3)."

Defendant argues that this probation condition violates the Fifth Amendment and is overbroad, and that it must be either stricken or modified to (1) provide for direct and derivative use immunity of information obtained during polygraph examinations and (2) limit the questions that may be asked during polygraph examinations.

### 1. Fifth Amendment Analysis

The majority agrees with defendant that the probation condition required by section 1203.067, subdivision (b)(3) "is prohibited under the Fifth Amendment" and orders the language "waive any privilege against self-incrimination and" stricken from the probation condition. (Maj. opn. at pp. 7, 22.)

The majority relies primarily on *Minnesota v. Murphy* (1984) 465 U.S. 420 (*Murphy*). In *Murphy*, the defendant was subject to a probation condition requiring that he participate in a treatment program for sexual offenders, report to his probation officer as directed, and be truthful with the probation officer " 'in all matters.' " (*Id.* at p. 422.) In his treatment program, the defendant admitted a prior rape and murder. (*Id.* at p. 423.) Those admissions were communicated to the probation officer, who questioned the defendant. The defendant admitted the crimes to the probation officer, and criminal

3

charges were filed as a result. The defendant then sought to suppress his admissions on the ground that his statements had been compelled by the probation condition. (*Id.* at pp. 424-425.)

The United States Supreme Court emphasized that in general, the Fifth Amendment is not self-executing: "a witness . . . ordinarily must assert the privilege rather than answer if he [or she] desires not to incriminate himself [or herself]." (*Murphy, supra,* 465 U.S. at p. 429.) The probation condition in *Murphy* required the defendant only to be truthful, and thus the defendant still could have claimed the privilege against self-incrimination. (*Id.* at pp. 436-437.) The *Murphy* court considered whether there were any applicable exceptions to the general rule that the Fifth Amendment is not self-executing. (*Id.* at p. 429.) In particular, the court considered whether to excuse the defendant's failure to assert the privilege against self-incrimination on the basis of the "so-called 'penalty' " exception. (*Id*. at p. 434.)

The penalty exception had been applied in cases where "the State not only compelled an individual to appear and testify, but also sought to induce him [or her] to forego the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.' [Citation.]" (*Murphy, supra,* 465 U.S. at p. 434.) In *Murphy*, there was no evidence that the defendant would have been penalized for exercising his Fifth Amendment privilege. (*Id.* at pp. 437-438.) The probation condition itself "proscribed only false statements; it said nothing about his freedom to decline to answer particular questions and certainly contained no suggestion that his probation was conditional on his waiving his Fifth Amendment privilege with respect to further criminal prosecution." (*Id.* at p. 437.) Further, there was "no direct evidence that Murphy confessed because he feared that his probation would be revoked if he remained silent." (*Ibid*.)

The *Murphy* court explained how the penalty exception could apply to a probationer: "if the State, either expressly or by implication, asserts that invocation of

4

the privilege would lead to revocation of probation, it would have created the classic penalty situation, the failure to assert the privilege would be excused, and the probationer's answers would be deemed compelled and inadmissible in a criminal prosecution." (*Murphy, supra,* 465 U.S. at p. 435, fn. omitted.)  However, the court noted, "a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of incrimination." (*Ibid.,* fn. 7.)

As applied to this case, *Murphy* establishes that defendant's Fifth Amendment rights are not violated by the probation condition requiring him to waive the privilege against self-incrimination as to questions asked during the sex offender management program.  The state has, "by implication, assert[ed] that invocation of the privilege" in response to such incriminating questions "would lead to revocation" of probation.  (See *Murphy, supra,* 465 U.S. at p. 435.)  Thus, if defendant makes any statements in response to questions posed to him during the sex offender management program, those statements will be deemed compelled under the Fifth Amendment and thus involuntary and inadmissible in a criminal prosecution.  (*Ibid.*)  Since such statements will necessarily fall within the penalty exception, they will not be available for use at a criminal prosecution, and defendant's Fifth Amendment rights have not been violated.  (See *Chavez v. Martinez* (2003) 538 U.S. 760, 769 [plur. opn. of Thomas, J.] [the Fifth Amendment is not violated "absent use of the compelled statements in a criminal case against the witness"]; *id.* at p. 777 [conc. opn. of Souter, J.].)

In sum, because the penalty exception will necessarily apply to statements that defendant makes in response to questions asked as part of the sex offender management program under compulsion of the section 1203.067, subdivision (b)(3) probation condition, the condition itself does not violate the Fifth Amendment.

5

## 2. Scope of Polygraph Testing

Defendant also challenges the probation condition imposed pursuant to section 1203.067, subdivision (b)(3) insofar as it permits a polygraph examiner to question him about uncharged sex offenses. Defendant argues the condition is overbroad and requests we limit the condition. Defendant relies on *Brown v. Superior Court* (2002) 101 Cal.App.4th 313, in which a probation condition requiring polygraph testing was modified so that the questions were limited to "those relating to the successful completion of the stalking therapy program and the crime of which [the defendant] was convicted." (*Id.* at p. 321.) Defendant contends the trial court's oral statement of its "intention . . . that this waiver is limited to facilitate the successful completion of the [sex offender management] program" was ineffective because that limitation was not stated in the court's written orders.

Although the probation condition does not expressly limit the questions that may be asked during polygraph examinations to those related to the successful completion of the program or defendant's criminal conviction, such a limitation is inherent in the phrase "which shall be part of the [sex offender management] program pursuant to [section] 1203.067[, subdivision] (b)(3)." In other words, the probation condition requires polygraph examinations to be used only in furtherance of a probationer's treatment, and thus the condition implicitly requires that the questions asked be relevant to that treatment.

I conclude that the probation condition need not be modified to expressly state that the questions asked during polygraph examinations must be reasonably related to the completion of defendant's treatment program or his conviction, because such a limitation is inherent in the condition.

## B. *Section 1203.067, Subdivision (b)(4) Probation Condition*

Defendant also challenges the probation condition imposed pursuant to section 1203.067, subdivision (b)(4), which requires defendant to "waive any

6

psychotherapist/patient privilege to enable communication between the sex offender management professional and probation officer." Defendant contends this probation condition is overbroad and violates his constitutional right to privacy. He contends the condition should be stricken or modified.

The majority concludes there is no need to modify the probation condition imposed pursuant to section 1203.067, subdivision (b)(4) because it construes the statute as requiring a waiver of the psychotherapist/patient privilege "only insofar as it is necessary 'to enable communication between the sex offender management professional and supervising probation officer.' " (Maj. opn. at p. 15, quoting § 1203.067, subd. (b)(4).) I agree there is no need to modify the probation condition imposed pursuant to section 1203.067, subdivision (b)(4).

### C.    *Relationship Condition*

Defendant's probation conditions included an order that he "not date, socialize with, or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer." (Condition No. 5.)

Defendant contends this probation condition is "unconstitutionally vague and overbroad in violation of [his] rights to freedom of association and privacy," and he contends that the term " 'socialize' " is unconstitutionally vague. He did not object below, and the record contains little information about the facts underlying his offense.

The majority agrees with defendant that the probation condition is overbroad and vague. The majority concludes that the probation condition's "enormous scope . . . impinges on defendant's freedom [of association] far more broadly than necessary to serve the state's interests and the purposes of the condition." (Maj. opn., p. 20.) The majority also agrees with defendant that "the term 'socialize' is unconstitutionally vague in this context." (*Ibid.*) The majority further finds that "[t]he same is true of the requirement that defendant not 'date' or 'form a romantic relationship' with persons having custody of a minor." (*Id.* at p. 21.) The majority suggests that the trial court

7

could have imposed a "[m]uch less restrictive and more narrowly targeted" condition, such as "a requirement that defendant not be present in the same room with a minor absent adult supervision." (*Ibid*.) The majority concludes it is necessary to remand this case so the trial court can "consider imposing a probation condition that is more 'sufficiently precise' and 'closely tailor[ed]' to the purpose of protecting minors in defendant's presence." (*Ibid*.)

The condition imposed here is designed to prevent defendant having contact with children. However, the condition prohibits defendant from socializing with people such as family, friends and coworkers, even though he may never come into contact with their children. A restriction on socializing with *anybody* who has a child or children under the age of 18, even though defendant may never come into contact with those children, is not carefully tailored to the purpose of the condition. Simply put, it burdens activity that does not raise a sufficiently high probability of harm to governmental interests to justify the interference. Thus, I agree that the term "socialize" should be stricken from the condition.

On the other hand, the terms "date" and "form a romantic relationship" do not suffer from similar overbreadth problems. The number of individuals who defendant might seek to date or form a romantic relationship with is not nearly as large as the number of individuals defendant might socialize with. Further, although it is possible for a probationer to date or form a romantic relationship without coming into contact with the minors the condition seeks to protect, the condition is sufficiently restrictive in light of its purpose, which is to reduce defendant's opportunities for contact with minors. Nor do I believe the terms "date" and "romantic relationship" are unconstitutionally vague, as both terms "have a 'plain commonsense meaning, which is well settled . . . .' [Citations.]" (*In re R.P.* (2009) 176 Cal.App.4th 562, 566-567.) The verb "date," in this context, is commonly understood to mean to engage in activities with another person with the intent

8

of forming a romantic relationship.[3]  A romantic relationship is commonly understood to mean a relationship in which two people have feelings of love or affection for one another.[4]  Thus, the terms "date" and "romantic relationship" are " 'sufficiently precise for the probationer to know what is required of him [or her]. . . .' "  (*In re Sheena K.* (2007) 40 Cal.4th 875, 890.)

Rather than strike this condition and remand the matter to the trial court to possibly impose a more narrowly tailored condition, I would order condition No. 5 modified to provide:  "The defendant may not date or form a romantic relationship with any person who has physical custody of a minor unless approved by the probation officer."

### D.       *Internet and Data Encryption Condition*

Defendant's probation conditions included an order that he "not access the [I]nternet or any other online service, through the use of a computer or other electronic device, including a phone, at any location, including place of employment, without prior approval of the probation officer" and "not possess or use any data encryption technique program."  (Condition No. 17.)

Defendant contends the Internet portion of the condition should be stricken as overbroad insofar as it impacts his First Amendment rights, complaining that it effects a "complete ban on Internet access," which extends to his place of employment.  He argues that other probation conditions place sufficient restrictions on his computer and Internet

---

[3] One meaning of the noun "date" is "a social engagement between two persons that often has a romantic character," and the verb "date" can mean "to make or have a date with" or "to go out on usu. romantic dates."  (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 294.)

[4] One meaning of "romantic" is "marked by expressions of love or affection." (Merriam-Webster's Collegiate Dict. (10th ed. 1993) p. 1016.)

9

use.[5]  In his reply brief, defendant acknowledges that this court approved a similar condition in *People v. Pirali* (2013) 217 Cal.App.4th 1341 (*Pirali*), but he urges us to reconsider that decision.

In the alternative, defendant contends the Internet portion of the condition should be modified to include a scienter requirement.  In a supplemental brief, defendant makes a similar argument with respect to the data encryption portion of the condition.

The majority declines defendant's request to reconsider *Pirali* and concludes, with respect to the Internet use restriction, that "the probation condition is constitutional provided it includes a scienter requirement."  (Maj. opn., p. 16; see *Pirali, supra,* 217 Cal.App.4th at p. 1350 ["without an express knowledge requirement, defendant could unwittingly violate the condition as there are situations in which he may not know he has access to or has accessed the Internet"].)  The majority similarly concludes that a scienter requirement must be included in the data encryption portion of the condition.  (Maj. opn., p. 22.)

Because the addition of explicit knowledge elements will protect defendant from truly inadvertent acts while still serving the purpose of ensuring that his probation officer can track his Internet activity as necessary, I agree that both the Internet and data encryption aspects of condition No. 17 should be modified to include knowledge requirements.

---

[5] Defendant points to the probation conditions requiring that his computer be "subject to Forensic Analysis search" (condition No. 12), that he "not enter any social networking sites, nor post any [ads], either electronic or written, unless approved by the probation officer" (condition No. 13), that he provide personal email addresses and website passwords to the probation officer (condition No. 14), and that he "not clean or delete Internet browsing activity" and "keep a minimum of four weeks of history" (condition No. 18).

### E.    Pornography Conditions

Defendant's probation conditions included an order that he "not purchase or possess any pornographic or sexually explicit material as defined by the probation officer" (condition No. 15) and an order that he "not frequent, be employed by, or engage in, any business where pornographic materials are openly exhibited" (condition No. 16).

Defendant contends that condition No. 15's phrase "as defined by the probation officer" is unconstitutionally vague and should be replaced with the phrase " 'having been informed by the probation officer that such items are pornographic or sexually explicit.' "  (See *Pirali, supra,* 217 Cal.App.4th at p. 1353.)  Defendant contends that condition No. 16 should be modified to include a scienter requirement and to replace the word "frequent" with the phrase "visit or remain."  (See *People v. Leon* (2010) 181 Cal.App.4th 943, 952.)

The Attorney General agrees that these conditions should be modified as defendant suggests, and the majority orders those modifications.  (Maj. opn., pp. 17-18, 23.)  I agree that such modifications are appropriate.

### III.    CONCLUSION

I would not strike or modify the probation conditions required by section 1203.067, subdivisions (b)(3) and (b)(4), which require defendant to "waive any privilege against self-incrimination and participate in polygraph examinations" as part of the sex offender management program, and to "waive any psychotherapist/patient privilege to enable communication between the sex offender management professional and probation officer."  I would modify condition No. 5, which prohibits defendant from dating, socializing, or forming a romantic relationship with any person who has physical custody of a minor unless approved by his probation officer, to delete the term "socialize."  I would modify condition No. 15, which prohibits defendant from possessing pornographic or sexually explicit material, to delete the phrase "as defined by

11

the probation officer" and replace it with a more specific scienter requirement. I would modify condition No. 16, which prohibits defendant from frequenting, being employed by, or engaging in any business where pornographic materials are openly exhibited, to replace the word "frequent" with the phrase "visit or remain in" and to include a knowledge requirement. Finally, I would modify condition No. 17, which prohibits defendant from using the Internet without prior approval of the probation officer and from possessing or using any data encryption technique, to include express knowledge requirements. As modified, I would affirm the judgment.



BAMATTRE-MANOUKIAN, ACTING P.J.